Beth Creighton, OSB #972440
E-mail: *beth@civilrightspdx.com*
Michael E. Rose   OSB #753221
E-mail: *mrose@civilrightspdx.com*
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:       (503) 223-1516

Of Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **KAREN STOKES and JENNIFER MORLOK**, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| vs. | (Civil Rights Violation - 42 USC §1983; Title IX 20 USC §1961, Retaliation for Whistleblowing - ORS 659A.199, ORS 659.203; Disability Discrimination/Failure to Accommodate; OFLA/FMLA Violation) |
| **UNIVERSITY OF OREGON, and SHELLY KERR, ROBIN HOLMES, JOSEPH DEWITZ, KATHIE STANLEY, JOHN ROE and JANE ROE in their individual capacities,** | |
| | JURY TRIAL REQUESTED |
| Defendants. | |

## I.

## INTRODUCTION

1.      Pursuant to 42 USC § 1983, Plaintiffs allege the deprivation of their rights as

guaranteed by the First Amendment to the United States Constitution, and of their rights as

protected by Title IX and State Whistleblower Statutes.  Plaintiff Stokes also alleges violations

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

of her right to be free from discrimination based upon disability and to exercise her rights to

FMLA/OFLA leave.  They seek damages, attorney fees and litigation expenses/costs, including

expert witness fees and expenses in an amount to be determined by a jury at trial.

## II.

## PARTIES

2.      At all times material herein, Plaintiff Karen Stokes is a current employee of the

University of Oregon and resides in Lane County, State of Oregon.

3.      At all times material herein, Plaintiff Jennifer Morlok is a former employee of the

University of Oregon, and resides in Lane County, State of Oregon.

4.      Defendant University of Oregon (herein "UO") is, and was at all relevant times, a

public university governed by the Board of Trustees of the University of Oregon.

5.      Defendant UO receives federal funding and is subject to Title IX of the Education

Amendments of 1972, 20 USC 1681(a).

6.      Defendant Shelly Kerr is a resident of the State of Oregon. At all times material

herein she was the University Counseling and Testing Clinic (herein "UCTC") Director and was

acting under color of state law and within the scope of her employment or duties. She is sued in

her individual capacity.

7.      Defendant Robin Holmes is a resident of the State of Oregon. At all times

material herein she was Vice President for Student Life at the University of Oregon and was

acting under color of state law and within the scope of her employment or duties. She

participated in, approved and/or directed some or all of the adverse actions against Plaintiffs and

helped create and foster a hostile work environment.  She is sued in her individual capacity.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

8.      Defendant Joseph DeWitz is a resident of the State of Oregon. At all times material herein he was the Assistant Clinical Director for the UCTC and acting under color of state law and within the scope of his employment or duties. He is sued in his individual capacity.

9.      Defendant Kathie Stanley is a resident of the State of Oregon. At all times material herein she was the Associate Vice President and Chief of Staff of the University of Oregon and acting under color of state law and within the scope of her employment or duties. She participated in, approved and/or directed some or all of the adverse actions against Plaintiffs and helped create and foster a hostile work environment.  She is sued in her individual capacity.

10.     At all times relevant herein, John and Jane Roes were active in the decisions herein that harmed Plaintiffs and in the creation of a hostile and retaliatory work environment.

### III.

### JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 USC §1331 and 28 USC §1367.

12.     Venue is proper in this district pursuant to 28 USC §1391(b).

### IV.

### FACTS

### STOKES

13.     Since July 2011, Stokes worked for UO as an Executive Assistant at the University Counseling and Testing Center, providing executive-level administrative support to Defendant Shelly Kerr and other members of the leadership team.

14.     In December 2014, Defendant Kerr requested by email that Stokes make a complete copy of a student's medical file and provide it to UO's General Counsel without

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

stamping it or documenting that the file was copied, as was the usual procedure in the records. Defendant Kerr told Stokes not to discuss this with anyone besides herself, Defendant DeWitz and Brooks Morse.

15.     Stokes did not understand why the request was made outside the normal procedure and protocol and noticed that there was no consent in the file authorizing the disclosure of the medical records to General Counsel, nor was there any notice to the student's clinical therapist of the request as was the norm for medical records requests.

16.     Stokes took a copy of the email and her concerns to the student's therapist, Jennifer Morlok, who confirmed that she had not been told about the request and that there was no release from the student in the file authorizing these records to be copied and given to UO's General Counsel.

17.     Both Stokes and Morlok were aware that there was potential litigation against UO by this student and that UO's attorneys were adverse to the student's interest.

18.     Stokes was absent from work the next two days.  When she returned, she found out that another administrative employee did Kerr's bidding, *viz.*, copying the file without the student's authorization or permission, and that Defendant Kerr had walked the copy of the student's file to General Counsel's office.   Stokes later learned that the access of the medical records was in contravention of the student's attorneys' express instruction NOT to access those records.

19.     Stokes, along with Morlok, did some research into the UO's policies about medical records disclosures and sought further information from administrators in the UO leadership, including the President of the UO.  When it still appeared there were legal and ethical

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

issues regarding Defendant Kerr's disclosure of the medical file to UO's General Counsel and UO was not addressing those issues, Stokes and Morlok decided to take action outside UO to address the unauthorized disclosure.

20.     Stokes permitted Morlok to use the email described in ¶14, *ante*, in the complaints Morlok filed with the Oregon Board of Psychologist Examiners ("Psychology Board") on January 25, 2015, regarding the ethical violations this event raised.

21.     Stokes then joined Morlok in writing a Letter of Concern regarding the release of the medical records and disclosing that a complaint had been filed with the appropriate authorities and sent it to UO administrators and to employees of the counseling center on February 8, 2015.

22.     The next day, Defendant Kerr began removing some of Stokes' job responsibilities.

23.     Stokes went out on FMLA/OFLA leave to attend to her dying father, who passed away on February 17, 2015.

24.     Stokes returned to work on March 2, 2015.  When she returned, UO reassigned multiple job duties to other employees, without explanation.  Additionally, Stokes emailed Defendant Kerr about questions related to her job duties and received no response.

25.     After Stokes' return from FLMA leave, Defendant Kerr told her that Kerr did not want Stokes to have access to clinical or personnel issues "until the investigation was over" and that Kerr was confident she would be cleared of all wrongdoing.  Kerr further commented that when that happened, the duties would "return to that position," implying that Stokes would no longer be employed in that position at the conclusion of the investigation.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

26.     On March 6, 2015, Stokes and Morlok attended a meeting with an investigator who, they were told, was reviewing the concerns they voiced in their letter of concern. When the investigator learned both were represented by counsel, she terminated the meeting.

27.     The meeting was rescheduled for March 20, 2015 at 12:30 PM.

28.     The morning before the meeting, Stokes met with UO's Affirmative Action administrator and told her that she was experiencing retaliation. The subject then turned to her termination from her position as the executive assistant to Shelly Kerr and her last day would be March 27, 2015. Defendant Kerr told Stokes, Kerr could "no longer trust her [Stokes]."

29.     UO used the pretext that Stokes was "unable to perform the essential functions of her job with the accommodations provided to her." That determination was based solely on information from Defendant Kerr and other UO personnel, without input from Stokes or her doctor. Stokes disagrees with UO's false and pretextual reasons for her termination and was told by the Affirmative Action administrator on January 9, 2015, that there was no evidence that she could not do her job.

30.     On March 20, 2015, Stokes and Morlok met with an investigator who they were told was reviewing the concerns they voiced in their letter of concern. It was apparent that this interview was targeting Plaintiffs' actions and was being used primarily as an opportunity for Defendants to gain information to use against Plaintiffs, rather than to investigate Plaintiffs' concerns about privacy issues or the unethical disclosure of the medical records. The investigator was an attorney from a firm that represents the UO against unlawful employment practices claims, with no advertised expertise in HIPAA, privacy laws or education law.

31.     From the time Defendants knew or had reason to know that Morlok and Stokes

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

voiced ethical and legal concerns about the UCTC management's conduct until Stokes'

termination from the UCTC, Defendants retaliated against Stokes in the following manner:

        a) made it difficult for Stokes to do her job;

        b) created a hostile and retaliatory work environment;

        c) falsely accused her of policy violation;

        d) subjected her work to hyper-scrutiny;

        e) treated her in an unfriendly and punitive manner; and

        f) isolated her.

32.    After Stokes was terminated from the UCTC, she was told UO would attempt to find her another job for which she was qualified under the ADA process.

33.    Despite there being several jobs in other divisions for which she was qualified, she was offered a job in the Division of Student Life under the same administrators that removed her from her UCTC position.

34.    UO refused to offer any other transfer options.

35.    Stokes is currently working at a temporary work assignment until June 30, 2016, when her current contract ends.

## MORLOK

36.    Morlok was a Case Manager and Senior Staff Therapist from June 2013 through October 31, 2015.

37.    Morlok was the therapist of a student who sent a notice of tort claim pursuant to ORS 30.275.

38.    During the course of Morlok's treatment of the student, Morlok was asked to

CREIGHTON
& ROSE, PC     | ATTORNEYS
             | AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

write a summary letter for the student summarizing the student's medical conditions and treatment.

39.      When Morlok told Defendant Kerr that a summary letter had been requested, Kerr told her to hold off on writing the letter until she conferred with Doug Parks, General Counsel for UO.

40.      Thereafter, Defendant Kerr told Morlok not to write the treatment summary letter, which was contrary to how requests for summary letters had been treated in the past.

41.      Morlok, feeling uncomfortable with the instruction to deny her client a service which others had been given in the past without issue, conferred with her own legal counsel about the propriety of denying a summary letter request.

42.      Morlok opposed UO and Kerr's direction not to issue a letter summarizing her client's treatment.  When Morlok asked if she could speak to UO General Counsel about the decision, Defendant Kerr told her she could not.

43.      Morlok wrote the summary letter, believing that she had an ethical and legal obligation to do so.  On November 17, 2014, she emailed Defendant Kerr and informed her that there was a letter of summary in the file.

44.      Moments later, Defendant Kerr came flying into Morlok's office, irate that her instructions had been disobeyed.  Morlok explained to Defendant Kerr that she had consulted with outside ethics counsel and concluded her ethical duties required her to write the requested summary letter, and that to treat this student's request differently was in her mind a violation of Title IX.

45.      In response, Defendant Kerr lectured Morlok for over 2 hours and gave her a

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

directive not to consult with any attorneys about any UO matters and told her if she disobeyed this directive, she could face discipline, up to and including termination.

46.     A few days later, Defendant Kerr reiterated her directive saying "you are not to seek outside legal counsel regarding anything that has to do with your role here [at the UO]." Defendant Kerr then made it clear that Morlok was not to act on any information she was getting externally regarding Morlok's ethical concerns without consulting with Kerr first.  If Morlok did do so, Morlok could face discipline, up to and including termination.

47.     On November 25, 2014, Morlok met with Defendant DeWitz, who defended Defendant Kerr's comments threatening Morlok's job after Morlok presented ethical and legal concerns.

48.     On December 2, 2014, Morlok received an evaluation that included negative sections.  Morlok asked Defendant DeWitz if the negative sections were due to her writing the treatment summary for the student.  He responded that was part of the reason he evaluated her the way he did.

49.     On December 8, 2014, Stokes came to Morlok with an email request from Defendant Kerr to copy the student's medical records and give the records to the UO General Counsel without documenting that the copies had been made or stamping the copies. Morlok confirmed that there was no authorization from the student to release those records to UO's General Counsel.

50.     A few days later, Morlok learned another employee had copied the records and given them to Shelly Kerr.

51.     Morlok began her own investigation into the legality and priority of the release of

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

the student's records.

52.    On or about January 8, 2015, the student whose records were released to UO General Counsel without her permission or consent filed suit with a claim for "Intrusion Upon Seclusion" for the unauthorized release of those records.

53.    On or about January 21, 2015, during a Senior Staff meeting, Defendant Kerr reported that a claim had been filed against UO of the release of the records.  Defendant Kerr indicated that "accusation" that records were inappropriately disclosed were harmful to the counseling center.

54.    Defendant DeWitz responded with frustration, stating "Isn't there potentially some way we could 'sanction' whoever reported such a 'frivolous' and 'inappropriate' claim?" Since the student making the claim was Morlok's client, it was apparent that senior leadership felt Morlok had a hand in disclosing that the records had been released.

55.    After determining that Defendant Kerr's release of the medical records violated both State and Federal privacy laws, Morlok then sent a complaint to the Psychology Board regarding Kerr's ethical violation.  The complaint, dated January 25, 2015, included the following violations:

a) Failure to protect clinical information/records of a client according to ethical and professional standards;

b) failure to support and advocate for client records to be protected;

c) failure to act ethically when asking a UO staff member to go outside of normal policies and protocol when copying private student medical records without the student's consent;

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

d) failure to act professionally to a supervisee and failure to practice with integrity, threatening a clinical therapist for providing a summary letter to the client upon her request and for seeking outside counsel;

e) failure to act ethically by including a false negative section in the employee review after her concern regarding unfair treatment of the student was raised; and

f) failure to maintain a non-hostile environment for sexual assault victims/survivors under Title IX.

56.      Morlok also filed complaints with the Psychology Board against Defendant Robin Holmes, Defendant Joseph DeWitz and another UCTC administrator.

57.      On February 8, 2015, Morlok and Stokes wrote a letter of concern to the UO administrators and UCTC employees expressing their concern about the unethical and unlawful conduct of the UCTC administrators and senior leadership in their requests of Morlok to provide "nonstandard care" for a student who the UO anticipated would sue the UO and that the UCTC leadership had accessed the medical records of the student without the student's permission or consent.

58.      On February 10, 2015, Morlok contacted Defendants DeWitz, Kerr and other UCTC managers about an unsafe student who had to be transported off the campus and requested that a safety plan be developed concerning this student.  There was a concern this student would present a threat to the safety of others.  In contrast to the immediate feedback Morlok had experienced prior to her earlier letter of concern, Morlok's emails were ignored for days.

59.      On February 11, 2015, in an attempt to get guidance on the potential threatening

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

situation, Morlok then sent another email to Defendants DeWitz, Kerr and other UCTC managers, requesting guidance how this situation should be handled. Again there was no response.

60.    On February 12, 2015, Morlok sent yet another email to Defendants DeWitz, Kerr, Holmes and other UCTC managers, again requesting guidance about a safety plan and expressing concern that there was no safety plan in place for the front desk staff and clinicians.

61.    Finally, after 3 days, Morlok received a response from Defendant DeWitz to her emailed concerns. She met with him. The meeting quickly turned to Defendant DeWitz falsely accusing her of breaking confidentiality regarding the student with the safety concern and that she falsified her calendar. Morlok refuted both concerns. Morlok then told Defendant DeWitz that she felt these accusations were retaliatory since they were lodged so close in time to when her letter of concern had come out.

62.    On February 11 and 12, 2015, there were UCTC staff meetings where Morlok and Stokes' letter of concern was discussed. Defendants Kerr and DeWitz told the group the concerns were "frivolous," "false," and "misleading." Defendants Kerr and DeWitz also indicated Defendant Holmes was in agreement that they had done nothing wrong. Defendants ostracized Plaintiffs, diminishing and devaluing their report of UO's unethical and illegal conduct and cast them as the enemy in an us-against-them mentality designed to discredit them.

63.    In April of 2015, UO falsely accused Morlok of a Title IX violation for "discouraging" sexual assault victims from accessing services from UO. As a general principle, when discussing informed consent, Morlok advised the students seeking services that if the student believe that s/he had some sort of legal issue with the UO, s/he might want to seek

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

services outside UO, but services were available to all students.

64.    On April 22, 2015, Defendants Kerr, DeWitz and Holmes met with UCTC senior staff to tell them the "independent review" found no wrongdoing.  Defendant Holmes stated that the access of the medical records was not the purpose of the review (contrary to what Stokes and Morlok had been told) and that the investigator only investigated whether the staff felt like policies and procedure were being followed.

65.    On August 18, 2015, the United States Department of Education issued Guidance indicating that institutions that are involved in litigation with a student should not share the student's medical records with the institution's attorney without a court order or written consent.

66.    On September 25, 2015, the Board of Psychology found Defendant Kerr in violation of her ethical duties and imposed a $5,000 fine, a letter of reprimand and required her to take ethics courses.  Defendant Kerr continued to deny any wrongdoing.

67.    From the time Defendants knew or had reason to know that Morlok and Stokes voiced ethical and legal concerns about the UCTC management's conduct until the date of her resignation, Defendants retaliated against Morlok in the following manner:

　　　　a) made it difficult for Morlok to do her job;

　　　　b) created a hostile and retaliatory work environment;

　　　　c) falsely accused of policy violation;

　　　　d) subjected her work to hyper scrutiny;

　　　　e) treated her in an unfriendly and punitive manner; and

　　　　f) isolated her.

68.    The conditions of the workplace became so intolerable for Morlok that she was

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

forced to resign, effective November 2, 2015.

## V.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### ORS 659A.203 & ORS 659A.199, Retaliation for Whistleblowing
### Against University of Oregon

69.     Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

70.     By the acts described above, Defendant UO retaliated against Plaintiffs, in violation of ORS 659A.203 & ORS 659A.199, because Plaintiffs disclosed information that was evidence of the violation of the Federal Educational Rights and Privacy Act and state law ethical rules that govern psychologists, as well as abuse of authority.

71.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have incurred economic losses including but not limited to lost income, lost benefits and seniority, and housing expenses. These losses are continuing to accrue daily and will be determined by a jury at the time of trial.

72.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered loss of future income and impairment of earning capacities in an amount to be determined by the jury.

73.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered emotional distress in amounts to be determined by the jury at trial.

74.     Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to ORS 659A.885.

///

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## SECOND CLAIM FOR RELIEF
## 42 U.S.C.§ 1983
## United States Constitution, First Amendment
## Against Defendants Kerr, DeWitz, Stanley and Holmes

75.     Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

76.     The acts of Defendants described herein were taken under color of state law.

77.     Morlok opposed the student's right not to be treated differently because the student had filed a tort claim notice, a pre-requisite to filing suit against UO.  In doing so, she supported her client's right to redress her client's own grievances and engage in litigation against the UO.

78.     Morlok and Stokes opposed UO's differential treatment of a student which they indicated was a violation of Title IX.  Morlok and Stokes also opposed UO managements' unethical and illegal disclosure of medical records without the patient's permission or consent, which violates Psychology Board ethical rules, and federal privacy laws concerning both medical records and educational records.

79.     Morlok and Stokes made protected complaints that UO violated state or federal statutes, regulations or rules.

80.     Defendants Kerr, DeWitz, Stanley and Holmes retaliated against Plaintiffs for making protected complaints and for speaking out about matters of public concern. Defendants Kerr, DeWitz, Stanley and Holmes' acts violated Plaintiffs' rights under the First Amendment of the United States Constitution, made applicable to the State of Oregon through the 14th Amendment.

81.     As a direct and proximate result of Defendants Kerr, DeWitz, Stanley and Holmes' unlawful acts, Plaintiffs have incurred economic losses including but not limited to lost

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

income, lost benefits and seniority, and housing expenses. These losses are continuing to accrue

daily and will be determined by a jury at the time of trial.

82.    As a direct and proximate result of Defendants Kerr, DeWitz, Stanley and

Holmes' unlawful acts, Plaintiffs have suffered loss of future income and impairment of earning

capacity in an amount to be determined by the jury.

83.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

suffered emotional distress in amounts to be determined by the jury at trial.

84.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and

costs pursuant to 42 USC § 1988.

## THIRD CLAIM FOR RELIEF

## TITLE IX - Against Defendant University of Oregon

85.    Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

86.    As described above, Morlok advocated for the rights of her client, who UO

publically disclosed as the victim of the alleged gang rape by UO basketball players.  In doing

so, she spoke out about discrimination prohibited by Title IX and opposed her client's denial of

benefits, exclusion from participation in, creation of a hostile educational environment and

discrimination against her client on the basis of sex.

87.    As described above, Stokes advocated for the rights of a student, who UO

publically disclosed as the victim of the alleged gang rape by UO basketball players, not to have

her records disclosed in violation of federal privacy laws.  In doing so, she spoke out about

discrimination prohibited by Title IX.

88.    Thereafter, Defendant UO retaliated against Plaintiffs for their protected Title IX

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

complaints as described herein, which violates Title IX.

89.    As a direct and proximate result of Defendants' violation of Title IX, Plaintiffs

have incurred economic losses including but not limited to lost income, lost benefits and

seniority. These losses are continuing to accrue daily and will be determined by a jury at the time

of trial.

90.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

suffered loss of future income and impairment of earning capacity in an amount to be determined

by the jury.

91.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

suffered emotional distress in amounts to be determined by the jury at trial.

92.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and

costs.

## FOURTH CLAIM FOR RELIEF

### DISABILITY DISCRIMINATION
### Against Defendant University of Oregon

93.    Plaintiff Stokes incorporates paragraphs 1 through 68 as if fully set forth herein.

94.    Stokes requested accommodation for disability from UO.  UO granted the

accommodation, then withdrew it after she expressed her concerns about UO's unethical and

illegal handling of a student's confidential medical file.

95.    UO terminated Stokes from her position at the UCTC when she could and had

been performing all of the essential functions of the executive administrator's position with the

accommodations provided to her.

96.    UO made false statements about Stokes' ability to perform her job as a cover-up

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

for their discriminatory and retaliatory conduct.

97.     As a direct and proximate result of Defendants' conduct, Stokes has incurred

economic losses including but not limited to lost income, lost benefits and seniority. These losses

are continuing to accrue daily and will be determined by a jury at the time of trial.

98.     As a direct and proximate result of Defendants' unlawful acts, Stokes has suffered

loss of future income and impairment of earning capacity in an amount to be determined by the

jury.

99.     As a direct and proximate result of Defendants' unlawful acts, Stokes has suffered

emotional distress in amounts to be determined by the jury at trial.

100.     Plaintiff Stokes is entitled to reimbursement of her reasonable attorneys' fees and

costs.

### FIFTH CLAIM FOR RELIEF

### OFLA/FMLA VIOLATION
### Against Defendant University of Oregon

101.     Plaintiff Stokes incorporates paragraphs 1 through 68 as if fully set forth herein.

102.     UO is a covered employer subject to OFLA/FMLA.

103.     Stokes was eligible for OFLA/FMLA leave.

104.     Stokes requested OFLA/FMLA leave to care for her father who had a serious

medical condition that led to his hospitalization and eventual death.

105.     Stokes took less than 12 weeks of leave and returned to work after the death of

her father.

106.     When she returned to work, UO failed to restore Stokes to the position of

employment held by her at the time of her leave and took away significant portions of her job

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

duties, eventually terminating her employment with the UCTC.

107.     As a direct and proximate result of Defendants' conduct, Stokes has incurred economic losses including but not limited to lost income, lost benefits and seniority. These losses are continuing to accrue daily and will be determined by a jury at the time of trial.

108.     As a direct and proximate result of Defendants' unlawful acts, Stokes has suffered loss of future income and impairment of earning capacity in an amount to be determined by the jury.

109.     As a direct and proximate result of Defendants' unlawful acts, Stokes has suffered emotional distress in amounts to be determined by the jury at trial.

110.     Plaintiff Stokes is entitled to reimbursement of her reasonable attorneys' fees and costs.


WHEREFORE, Plaintiffs pray for their costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1.     Economic damages;

2.     Non-economic damages;

3.     Reinstatement or future lost wages;

4.     Reasonable attorneys' fees and costs;

5.     A declaration that Defendants violated Plaintiffs' rights and an order requiring defendants to take appropriate steps to make them whole;

6.     Prejudgment and post judgment interest as appropriate and allowed by law;

7.     On all claims, as applicable, amounts necessary to offset the income tax

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

consequences of receiving a lump sum payment, rather than receiving a payment of wages over

the applicable time frame;

      8.      Any and all other relief as this court may deem proper.


DATED this 9th day of November, 2015     CREIGHTON & ROSE, PC

          *s/Beth Creighton*
          BETH CREIGHTON, OSB #972440
          beth@civilrightspdx.com
          MICHAEL E. ROSE, OSB #753221
          mrose@civilrightspdx.com
          Attorneys for Plaintiff
          815 SW 2nd Avenue, Suite 500
          Portland, Oregon 97205
          Tel: 503.221.1792

**JURY TRIAL REQUESTED**

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
815 SW 2nd Ave #500
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 20 – COMPLAINT